# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DAVID MAURICE LYONS,

   Defendant-Appellant.

UNPUBLISHED
October 22, 2015

No. 319252
Macomb Circuit Court
LC No. 2013-000809-FC

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DAMIEN BANKS,

   Defendant-Appellant.

No. 319889
Macomb Circuit Court
LC No. 2013-000805-FC

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

Following a joint trial, a jury convicted defendants David Lyons and Damien Banks of assault with intent to do great bodily harm less than murder, MCL 750.84, conspiracy to commit assault with intent to do great bodily harm less than murder, MCL 750.157a and MCL 750.84,[1] armed robbery, MCL 750.529, and conspiracy to commit armed robbery, arising from the assault and robbery of Brad Bohen. Defendants raise several challenges to the evidence supporting their convictions, the instructions given to the jury, and their attorneys' performances, all of which lack merit. Defendant Banks, however, has established grounds to remand for a *Crosby*[2] hearing

---

[1] The jury acquitted defendants of the greater charged offenses of assault with intent to commit murder, MCL 750.83, and conspiracy to commit first-degree murder, MCL 750.157a and MCL 750.316(1)(a).

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

based on our Supreme Court recent pronouncement regarding the sentencing guidelines in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015). We therefore affirm both defendants' convictions in these consolidated appeals, but vacate defendant Banks's sentences and remand for further sentencing proceedings consistent with this opinion.

## I. BACKGROUND

Brad Bohen lived down the street from Tiffany Greathouse. After meeting in the neighborhood, Bohen became friends with Greathouse's brother, Maliki Greathouse, and her boyfriend, defendant Banks. On the day in question, Bohen testified that Banks and Maliki were visiting his home when he took a phone call from his attorney. Bohen told his attorney that he had gathered sufficient money to pay a $650 retainer plus additional fees and that he wished to procure his services. When Banks and Maliki heard this conversation, they allegedly looked at each other and left.

Later that day, Bohen left his home with approximately $2,500 in cash in his pocket. He travelled with his friend Renee Nomer and her two children to Costco and then to T.G.I. Friday's for dinner. While inside the restaurant, Bohen fielded two phone calls from Banks. Bohen alleged that Banks wanted him to purchase some Xanax and Adderall from him. Bohen told Banks that he could meet him at the restaurant. Banks called once and claimed to be outside the restaurant. Bohen could not find him in the parking lot and returned to his table. Bohen testified that Banks called again and claimed to be waiting outside. When Bohen exited the restaurant, he saw Greathouse sitting inside a vehicle in the parking lot. Bohen asserted that Greathouse pointed toward the back of the restaurant.[3]

Bohen walked toward the back parking lot and saw Banks and Lyons standing near the dumpster. Lyons is the boyfriend of Greathouse's mother and Bohen had not met him before the attack. As Bohen approached the men, someone struck him from behind in the head and he fell to the ground. Banks and Lyons ran toward him, and Bohen initially believed they were coming to assist him. However, Banks and Lyons joined the fray, keeping him on the ground, and hitting and kicking him. A young female employee of the restaurant came out at the end of her shift and saw two tall, thin black men wearing hooded jackets beating a white man who was curled on the ground in fetal position. One man was using a "small, blunt object" that "looked like a hammer" to beat the victim in the head. She saw a third man standing watch. She yelled and the men ran away, with one man dropping something out of his pocket along the way. At the end of this encounter, Bohen had only $661 remaining in his pockets.

Bohen was hospitalized for five days and required surgery to remove a shard of his skull from his brain. Investigating officers brought photographic lineups to the hospital for Bohen's review. The first included black and white photographs and Bohen was unable to identify his

---

[3] Law enforcement initially charged and arrested Greathouse for playing a role in this offense. The charges were dismissed after a preliminary examination revealed insufficient evidence to bind her over for trial.

attackers. In the second lineup, Bohen identified Banks. In a third, Bohen selected Lyons from the array.

Following a joint trial before a single jury and several days of jury deliberations, the jury acquitted the defendants of the greatest charged offenses and convicted them of assault with intent to commit great bodily harm, armed robbery, and conspiracy to commit those offenses. These consolidated appeals followed.

## II. DEFENDANT LYONS (DOCKET NO. 319252)

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Through appellate counsel, Lyons argues that he was denied the effective assistance of counsel because his appointed trial attorney failed to file a required notice of intent to present an alibi defense, failed to emphasize the alibi testimony Lyons provided when he took the stand, and then failed to request a jury instruction regarding his alibi. Lyons also challenges counsel's failure to investigate his proffered defense and present witnesses to support his alibi claim.

With his in pro per brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Lyons filed a motion to remand for an evidentiary hearing regarding the adequacy of counsel's performance, including his challenge to counsel's failures in relation to his alibi defense. This Court denied that motion because Lyons had "not demonstrated that further factual development of the record or an initial ruling by the trial court is necessary at this time for this Court to address the issues he has raised on appeal." *People v Lyons*, unpublished order of the Court of Appeals, entered October 22, 2014 (Docket No. 319252). This Court also denied his motion for reconsideration, *People v Lyons*, unpublished order of the Court of Appeals, entered November 26, 2014 (Docket No. 319252), and the Supreme Court denied his motion for leave to appeal his remand motion, *People v Lyons*, 497 Mich 973; 859 NW2d 523 (2015).[4] Ultimately, because Lyons failed to request a new trial or *Ginther*[5] hearing in the trial court[6] and this Court and the Supreme Court denied his requests to remand for an evidentiary hearing, his challenge is unpreserved and our review is limited to mistakes apparent on the existing record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two

---

[4] In the midst of this activity, Lyons also filed a motion for peremptory reversal of his convictions, which this Court denied. *People v Lyons*, unpublished order of the Court of Appeals, entered January 20, 2015 (Docket No. 319252).

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] It appears from the record that Lyons filed an in pro per notice of hearing in the trial court attempting to raise this issue below but did not actually file the necessary motion.

components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014).]

Defense counsel did not file a notice of alibi defense as required by MCL 768.20(1). However, defendant took the stand, against counsel's advice, and testified that he was in Detroit visiting a friend and then his sister at the time of the Macomb County offense. In closing argument, counsel did not discuss defendant's alibi defense, focusing instead on the disparity between the description of the offenders and Lyons, and Bohen's memory deficits caused by two earlier accidents. Counsel further emphasized the changes in Bohen's story over time. Subsequently, counsel did not request that an alibi instruction be read to the jury. However, defense counsel's actions did not amount to ineffective assistance.

Decisions regarding what defenses to present are pure trial strategy. *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987). Here, counsel chose to focus on the complainant's credibility and the differences between Lyons's actual appearance and the description given by the T.G.I. Friday's employee who interrupted the attack. Presenting alibi evidence would not have been inconsistent with this approach. However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are [also] presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). We may not second guess counsel's decision to focus on one defense over the other. *Id.* at 76-77.

We further note that Lyons has not presented affidavits from those witnesses he claims could have supported his alibi defense. Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks and citation omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Absent affidavits supporting the viability of his proffered defense, however, we are unable to determine that counsel unreasonably declined to present an alibi defense to the jury. We also cannot ascertain from the record that counsel failed to investigate this theory. It is equally possible that counsel interviewed the witnesses and decided not to call them to the stand based on credibility issues or because they did not provide accounts consistent with Lyons's version of events. The burden is on defendant to establish the factual predicate for his claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), which he has not done.

Lyons contends that counsel's failure to focus on his alibi defense was exacerbated when counsel failed to request an alibi instruction and then approved of the jury instructions as given. The decision not to request a particular jury instruction is usually a matter of trial strategy. See *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003). We discern no prejudice in this regard. Despite the lack of an alibi instruction, the jury heard Lyons's testimony that he was not in the area at the time of the offense because he was visiting a friend and then his sister in Detroit. Without special instruction, a person of ordinary intelligence could review Lyons's testimony and, if he or she found Lyons credible, could determine that Lyons was innocent. Accordingly, the lack of an instruction did not affect the outcome of the trial. See, e.g., *People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19 (2000).

## B. ADMISSION OF EVIDENCE

The T.G.I. Friday's where the assault occurred was equipped with surveillance cameras on the back of the restaurant. A restaurant manager allegedly downloaded that section of the footage showing the assault onto a thumb drive and presented it to the investigating officer. The trial court precluded the parties from playing the footage because it lacked an adequate foundation. Specifically, the investigating officer did not witness the transferring of the image and neither party presented the restaurant manager as a witness. Therefore, there was no evidence that the footage on the thumb drive was actually a recording of events on the date and time in question. Defendant Banks agreed to this course of action, but Lyons's counsel asserted that he had no objection to the admission of the video despite the lack of foundation. Ultimately, however, the parties stipulated to the admission of several still shots from the footage. Specifically, defense counsel informed the court that "we do so stipulate on behalf of Mr. Lyons without any equivocation."

Lyons now challenges the court's evidentiary ruling. However, a defendant cannot stipulate to a matter and then argue on appeal that the resulting action was error. No party is permitted "to assign error on appeal to something his own counsel deemed proper at trial." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). We therefore deem this challenge waived.

## C. DEFENDANT LYON'S STANDARD 4 BRIEF

Lyons also raises several challenges in an in pro per appellate brief.

## 1. SUFFICIENCY OF THE EVIDENCE

Lyons first contends that the prosecutor presented insufficient evidence to support his charges and convictions. We review de novo challenges to the sufficiency of the evidence, reviewing the entire record in the light most favorable to the prosecution to determine if a rational jury could find the elements of the offense established beyond a reasonable doubt. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "In applying this standard, a court must 'draw all reasonable inferences and make credibility choices in support of the jury verdict.'" *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (citation omitted).

Lyons first challenges the sufficiency of the evidence supporting the original charged offense of assault with intent to commit murder. The jury acquitted defendant of that charge and convicted him of a lesser offense—assault with intent to do great bodily harm less than murder. Where a greater charge is improperly submitted to the jury, but the defendant is acquitted of that charge and convicted of a lesser offense that was properly submitted to the jury, the error is harmless unless "persuasive indicia of jury compromise are present[.]" *People v Graves*, 458 Mich 476, 486-488; 581 NW2d 229 (1998). Defendant does not argue and has made no attempt to establish that his conviction on the lesser offense was the result of jury compromise. Rather, his claim is based on a challenge to Bohen's credibility. That Bohen gave inconsistent statements regarding the attack and then inconsistent testimony affects the weight of the evidence, not its sufficiency to establish the offense elements. *People v Naugle*, 152 Mich App 227, 235-236; 393 NW2d 592 (1986). Weighing the credibility of the witnesses is the jury's duty, and we may not interfere with its assessment. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). The victim's identification testimony, if believed, was sufficient to enable the jury to find beyond a reasonable doubt that Lyons was one of the persons who assaulted him. Accordingly, we cannot conclude that the court improperly presented the assault with intent to murder charge to the jury on the ground raised.

Lyons similarly challenges the presentation of the conspiracy to commit first-degree murder charge to the jury. "A conspiracy is [a] mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means." *People v Cotton*, 191 Mich App 377, 392; 478 NW2d 681 (1991). Direct proof of the agreement is not required. *Id.* at 393. Bohen named both Banks and Lyons as his assailants. Bohen testified that Banks telephoned him twice to lure him into the parking lot. These calls were made using a number later traced to Lyons. Lyons and Banks then joined together to physically attack him, Bohen asserted, using a hard blunt object to strike him in the skull. Again, Lyons challenges the sufficiency of the evidence based on Bohen's allegedly incredible testimony. However, that testimony was sufficient to support presenting the charge to the jury, and Lyons does not contend that the jury's decision to convict him of a lesser offense was the result of jury compromise. Accordingly, his challenge lacks merit.

Lyons next challenges the sufficiency of the evidence to support his convictions of armed robbery and conspiracy to commit armed robbery. Lyons contends that there was no evidence that Bohen had any money on his person that was taken from him, precluding conviction on these charges. To convict a defendant of armed robbery and conspiracy to commit that offense, the prosecutor must establish that a defendant attempted to take and remove another's property. See *People v Williams*, 491 Mich 164, 171-172; 814 NW2d 270 (2012). Bohen testified that he cashed a $3,000 check earlier in the day, and took approximately $2,500 with him when he went out that evening. Bohen further indicated that one of his assailants patted his pockets during the attack, and that he might have thrown money from his pocket on the ground in an attempt to stop the beating. No one found money on the ground and Bohen was left with only $661 after his assailants fled the scene. Accordingly, the jury could determine that Lyons conspired to and committed armed robbery.

## 2. JURISDICTION

Lyons contends that the trial court erred in denying his postjudgment motion for a directed verdict because it lacked jurisdiction to hear the case where insufficient evidence was submitted to the magistrate to justify the issuance of an arrest warrant on the robbery charges.

> [I]n a criminal case, an illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court. The sole effect of an illegal arrest is the possible suppression of evidence recovered as a result of the arrest. [*Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009).]

The circuit court, as a court of general jurisdiction, clearly had subject-matter jurisdiction over the charged felony offenses, *People v Lown*, 488 Mich 242, 268: 794 NW2d 9 (2011), and acquired personal jurisdiction over Lyons when he was bound over for trial after the preliminary examination. *People v Goecke*, 457 Mich 442, 458-459; 579 NW2d 868 (1998). Accordingly, Lyons's claim is meritless.

## 3. JURY INSTRUCTIONS

Lyons lastly challenges the trial court's decision to instruct the jury on the lesser offenses of assault with intent to do great bodily harm less than murder and conspiracy to commit assault with intent to do great bodily harm less than murder.[7]

First, we discern no error in the reading of the assault with intent to do great bodily harm less than murder instruction. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). The prosecutor requested the presentation of the assault with intent to do great bodily harm instruction as a lesser included offense of the assault with intent to commit murder charge. This Court has held that assault with intent to do great bodily harm "is a necessarily included lesser offense of assault with intent to commit murder." *People v Brown*, 267 Mich App 141, 151; 703 NW2d 230 (2005).

The evidence established that the assailants kicked and punched Bohen while he lay on the ground curled into a fetal position. An eye witness saw one of the assailants holding an object that he used to beat the victim. The witness believed the object was a hammer. The victim, however, provided inconsistent testimony regarding whether he was struck with an object. From this evidence, the jury could determine that the assault was so extreme as to show an intent to cause the victim's death, or could conclude it was only severe enough to lead to great bodily harm. Moreover, the nature of Bohen's injuries could have resulted in either conclusion

---

[7] Lyons does not challenge the court's presentation of the unarmed robbery instruction as a lesser included offense of armed robbery.

on the jury's part. Although Bohen suffered a head injury and required surgery, he never lost consciousness and moved unaided following the attack. Accordingly, we discern no error in the reading of this instruction.

The trial court read an instruction on conspiracy to commit assault with the intent to do great bodily harm as a lesser included offense of conspiracy to commit first-degree murder upon the prosecutor's request. Assault with intent to do great bodily harm is not a necessarily included lesser offense of first-degree murder. *People v Williams*, 143 Mich App 574, 579-581; 374 NW2d 158 (1985). Therefore, it follows that conspiracy to commit such an assault is not a necessarily included lesser offense of conspiracy to commit first-degree murder. "Consideration of cognate lesser offenses is not permitted." *People v Jones*, 497 Mich 155, 165; 860 NW2d 112 (2014).[8]

Although presentation of this instruction was technically improper, defense counsel waived any claim of error. A defense attorney's expression of approval of jury instructions waives any error, leaving no error to review. *People v Carter*, 462 Mich 206, 216-219; 612 NW2d 144 (2000). Here, counsel informed the trial court that Lyons did "not wish to have a lesser included offense given to the jury." Counsel continued, however, that he had explained to Lyons that the decision was not his to make and that counsel approved of reading the instruction. Attorneys have "full authority to manage the conduct of the trial" and determine trial strategy. *Id.* at 218-219, quoting *New York v Hill*, 528 US 110, 114-115; 120 S Ct 659; 145 L Ed 2d 560 (2000). Decisions involving lesser offense instructions are such matters of trial strategy. *People v Robinson*, 154 Mich App 92, 93; 397 NW2d 229 (1986). With respect to such issues, the defendant is bound by the acts of his attorney, including his attorney's waiver of an issue. *Carter*, 462 Mich at 218-219. And Lyons has not challenged counsel's performance in this regard. Accordingly, despite Lyons's concerns at trial regarding counsel's decision to permit this improper cognate offense instruction, there is no error for this Court to review.

## D. RECENT MOTIONS

On September 13, 2015, Lyons filed another motion to remand with this Court, and on September 27, a motion to file a supplemental brief. We have denied these motions in orders entered contemporaneously with this opinion. We take this opportunity to explain our decisions.

In his motion to remand, Lyons contends that his convictions are against the great weight of the evidence and that the trial court should have granted his motion for a directed verdict. Specifically, Lyons asserts that the prosecutor used Bohen's false and perjured testimony and that the surveillance footage reveals that Lyons was not present during the assault. In his motion to file a supplemental brief, Lyons states his desire to raise claims that his convictions were based on insufficient evidence and were against the great weight of the evidence because the

---

[8] "Cognate offenses share several elements and are of the same class or category as the greater offense, but contain elements not found in the greater offense." *People v Wilder*, 485 Mich 35, 41; 780 NW2d 265 (2010).

video evidence shows that he was not present during the assault, and that the court gave an inadequate aiding and abetting instruction.

Lyons has had several opportunities to present his issues to this Court and actually raised several of these challenges already. Lyons has already filed an in pro per appellate brief in which he could have raised any claim that he felt appellate counsel unjustly omitted. Lyons also already filed an in pro per motion to remand for an evidentiary hearing on counsel's performance, and easily could have sought a remand to address the weight of the evidence at that time. Lyons filed a motion for peremptory reversal with this Court challenging the trial court's denial of his motion for a directed verdict. In that motion and in the appellate briefs, Lyons challenged the sufficiency of the evidence supporting his convictions. Lyons has also already placed challenges based on the video evidence before this Court, which we have already resolved. Accordingly, further motions and briefs cannot salvage Lyons's appellate challenges.

## III. DEFENDANT BANKS (DOCKET NO. 319889)

### A. SUFFICIENCY OF THE EVIDENCE

Defendant Banks challenges the sufficiency of the evidence supporting his armed robbery and two conspiracy convictions. As noted, we review such claims de novo. *Cline*, 276 Mich App at 642.

Banks contends that the prosecutor could not support his convictions for armed robbery and conspiracy to commit armed robbery because he failed to establish that a larceny occurred. To prove a charge of armed robbery, the prosecutor must prove, among other things, that the defendant employed a weapon "in the course of committing a larceny of any money or other property that may be the subject of a larceny." *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007). The language of the armed robbery statute does not require a successful larceny to support a conviction; an attempted larceny suffices. *Williams*, 491 Mich at 172.

Banks focuses on the fact that Bohen was left with $661, his jewelry, and his cell phone as evidence that the attackers were not motivated to relieve Bohen of his valuables and that Bohen was either mistaken or lied about the amount of money he initially possessed. Banks further highlights Bohen's testimony that he did not recall either of his assailants actually taking anything from his person or demanding his money. Bohen merely speculated that one of the assailants took the money from his pocket or that he threw his money at the assailants in an attempt to end the attack. Therefore, Banks continues, the evidence does not support that a larceny occurred or was attempted.

However, Bohen testified that he had $2,500 in his pockets when he left his home on the evening in question. It is undisputed that Bohen was attacked by three individuals in the T.G.I. Friday's parking lot. One person hit Bohen from behind and two others kept Bohen on the ground by punching and kicking him. Following the attack, Bohen had only $661 remaining in his pocket. Bohen indicated that he had spent very little of his cash while shopping, tending to prove that someone took his funds. Bohen indicated that Banks and Maliki were aware that he had a significant amount of cash as they overheard his phone call with his attorney earlier that day, providing motive and opportunity. It is true that Bohen was uncertain whether one of the

assailants took the money from his pocket or whether he threw the cash onto the ground. However, the jury could conclude that the assailants unlawfully deprived Bohen of his property and we may not interfere with that judgment.

The evidence was also sufficient to prove a conspiracy to commit armed robbery. "A conspiracy is [a] mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means." *Cotton*, 191 Mich App at 392. Bohen testified that Banks and Maliki knew he was carrying a large sum of cash. Banks called Bohen twice and asked him to come to the T.G.I. Friday's parking lot. Those calls were traced to a cell phone registered to Lyons. Once Bohen was outside the restaurant, the assailants executed a preplanned attack. One assailant hit Bohen from behind to immobilize him and then the other two kept him on the ground by kicking and punching him and hitting him with a blunt object. At the conclusion of this assault, a large portion of Bohen's money was gone. This was sufficient to establish the challenged larceny element under Banks's conspiracy conviction.

In relation to both his conspiracy convictions, Banks also contends that the prosecutor presented insufficient evidence of an agreement to commit the offenses. However, direct proof of the agreement is not required. *Id.* at 393. It is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *Id.* Again, Banks and Maliki were allegedly present when Bohen told his attorney on the phone that he had a large sum of cash. Bohen testified that the pair looked at each other in a suspicious manner and left. Banks expressed his belief to a fellow inmate that Bohen owed him money. Later that day, Banks repeatedly telephoned Bohen to arrange to meet him. Some of the calls came from a cell phone registered to Lyons. When Bohen came outside the T.G.I. Friday's to meet Banks as arranged, three individuals awaited him. Bohen testified that Banks appeared to make a signal before someone hit him from behind. Banks and Lyons then joined together to attack and incapacitate him. The events leading up to the assault tend to establish that Banks began to plan the attack and larceny with Maliki earlier in the day and then Lyons joined the conspiracy. Viewing this evidence in the light most favorable to the prosecution, the prosecutor's case was sufficient to enable the jury to find beyond a reasonable doubt that the group had conspired to assault and rob Bohen. In addition, the jury could find from the ferocity of the assault and the use of a hammer-like object that the group intended to cause great bodily harm. Accordingly, the evidence supported Banks's conspiracy convictions.

## B. DEFENDANT BANKS'S STANDARD 4 BRIEF

### 1. JURY INSTRUCTIONS

Banks also filed an in pro per appellate brief raising additional challenges to his conviction. Banks argues that the trial court gave deficient jury instructions on reasonable doubt and identification evidence. The trial court's instructions on these matters comported with former CJI2d 3.2 (now M Crim JI 3.2) and CJI2d 7.8 (now M Crim JI 7.8), respectively. Upon inquiry by the court, the prosecutor and attorneys for both defendants pronounced themselves "satisfied with the jury instructions as read." Defense counsel's affirmative expression of satisfaction with the trial court's jury instructions waived any error. *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009). Accord *People v Kowalski*, 489 Mich 488, 503; 803

-10-

NW2d 200 (2011) ("When a defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver"). Therefore, defendant Banks's first claim of error is without merit.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Banks contends that his trial counsel was constitutionally deficient because he did not adequately impeach Bohen on the stand and because he failed to investigate and present the T.G.I. Friday's surveillance footage, which he claims would have exonerated him. Banks failed to request a new trial or *Ginther* hearing in the lower court. Banks filed a motion to remand in this Court, but based solely on sentencing issues. Accordingly, Banks's challenge is unpreserved and our review is limited to mistakes apparent on the existing record. *Rodriguez*, 251 Mich App at 38.

As noted by Banks, Bohen's testimony suffered from credibility issues. Bohen had suffered a closed head injury at some time in the past and as a result, experienced short term memory problems. One of the assailants dealt Bohen a severe blow to the head that sent a shard of his skull into his brain, likely causing additional memory problems. Bohen's version of events evolved in the days following the attack, with the victim initially claiming that he had blacked out and remembered nothing to ultimately naming Banks and Lyons (by their nicknames and through photographic identification) as his assailants.

Banks complains that defense counsel should have done more to impeach Bohen's credibility on the stand. Decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defense counsel did cross-examine Bohen in an attempt to discredit his story. Counsel elicited testimony from the investigating officers that Bohen appeared to be "intentionally withholding information" immediately following the attack. Other evidence revealed that Bohen did not name his attackers, despite knowing Banks, until the officers discovered that the calls Bohen received had come from Lyons's cell phone. Moreover, Bohen did not identify his attackers until after his friend, Chris Stege, visited him in the hospital. Despite a previous relationship with Banks, Bohen could not identify a photograph of Banks in the initial black-and-white photographic lineup, suddenly recognizing him in a lineup after Stege's visit. During closing argument, defense counsel argued that Bohen was a drug addict and dealer and was "a liar and a coward." Counsel emphasized Bohen's delay in identifying his attackers and argued the inference that Bohen was being untruthful. In short, the problems with Bohen's testimony were clear and counsel utilized them to argue that his identification of Banks was not credible. The jury nonetheless rejected that argument. Absent any suggestions about further actions that could have been taken, Banks cannot show that counsel's performance was deficient in this regard.

Banks further contends that counsel should not have stipulated to the admission of still frames from the T.G.I. Friday's video footage and should have fought for admission of the entire video. Unfortunately, as the video footage was not admitted into evidence, it is not part of the lower court record. Nothing in the record suggests that the assailants' faces were ever clearly visible in the footage such that Banks would be exonerated. Based on testimony from the investigating officers, it appears that the footage showed a violent assault perpetrated by two hooded men. Although the assailants could not be identified from the footage, from which

counsel could have argued that there existed a reasonable doubt about Banks's guilt, counsel could have feared prejudice to his client from viewing the assault in action. The jury could have reasonably inferred Banks's role from other evidence, including the victim's identification of Banks as one of his assailants, and convicted Banks of a greater charge based on the jurors' viewing of the actual assault footage. Accordingly, Banks has not overcome the presumption that there was a legitimate strategic reason for counsel's objection. *People v Gioglio (On Remand)*, 296 Mich App 12, 23; 815 NW2d 589 (2012).

### 3. DUE PROCESS CHALLENGE

Banks finally contends that the prosecutor violated his due process rights by presenting false testimony from the victim, and that trial counsel was ineffective for failing to admit evidence to prove that the victim lied. Banks failed to raise a contemporaneous objection to the prosecutor's conduct. Therefore, our review is limited to plain error affecting Banks's substantial rights. *People v Goodin*, 257 Mich App 425, 431; 668 NW2d 392 (2003).

A prosecutor violates a criminal defendant's due process rights when he knowingly uses false testimony (or fails to correct false testimony) in order to obtain a conviction. *People v Smith*, ___ Mich ___; ___ NW2d ___ (Docket No. 148305, decided July 30, 2015), slip op at 7. In fact, "the prosecution has an affirmative duty to correct false testimony." *Id.* The "*effect* of a prosecutor's failure to correct false testimony" is the lynchpin to deciding whether defendant's due process rights were violated. *Id.* (emphasis in original). The defendant is entitled to a new trial "if the uncorrected false testimony 'could . . . in any reasonable likelihood have affected the judgment of the jury.' " *Id.* at 8, quoting *Napue v Illinois*, 360 US 264, 271-272; 79 S Ct 1173; 3 L Ed 2d 1217 (1959) (alteration in original).

Although the investigating officers testified that Bohen seemed to purposefully withhold information in the beginning of the investigation, and Bohen's credibility was placed into question on the stand, there is no suggestion that either the officers or the prosecutor had reason to know, or even believe, that Bohen lied when he ultimately identified his assailants. The jury had the necessary information to consider Bohen's memory problems and adjudge his credibility. Accordingly, we discern no ground for granting Banks's relief.

### C. SENTENCING

On the eve of oral arguments, we granted Banks's motion to file a supplemental brief to address the propriety of his sentence in the wake of *Lockridge*, ___ Mich. *People v Banks*, unpublished order of the Court of Appeals, entered September 29, 2015 (Docket No. 319889). Banks contends that the court scored offense variables (OVs) 1, 2, 3, and 10 based on information that was not found by the jury. Those variable scores need to be adjusted, Banks asserts, which places his score in a lower sentencing grid and demands a new sentence. The prosecutor retorts that *Lockridge* requires lower courts to continue scoring the sentencing guideline variables using both jury and judge found facts.

The prosecutor correctly interprets the Supreme Court's holding in *Lockridge*. In *Lockridge*, the Court held: "we conclude that although the guidelines can no longer be mandatory, they remain a highly relevant consideration in a trial court's exercise of sentencing

discretion. Thus, we hold that trial courts 'must consult those Guidelines and take them into account when sentencing.' " *Id.* at 28, quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). In doing so, the sentencing court must assess the highest possible points for each applicable OV "whether using judge-found facts or not." *Id.* at 29 n 28. The effect of *Lockridge* is to make the sentencing guidelines advisory only. *Id.* at 28. Accordingly, once the guidelines are correctly scored using the highest number of points allowable for each variable, the court then has discretion to impose a sentence within the range or without.

In *Lockridge*, the Supreme Court determined that a defendant's challenge is unpreserved if he does not raise an objection to the scoring of his OVs in the trial court based on *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and *Alleyne v United States*, 570 US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013). *Lockridge*, slip op at 30. Banks did not raise any such challenge below and our review is therefore limited to plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The Supreme Court continued in *Lockridge*, slip op at 32, by describing how plain error may be established in future cases:

> First, we consider cases in which (1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced. In those cases, because the defendant suffered no prejudice from any error, there is no plain error and no further inquiry is required.

> Second, we consider the converse: cases in which facts admitted by a defendant or found by the jury verdict were insufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced. In those cases, it is clear from our previous analysis that an unconstitutional constraint actually impaired the defendant's Sixth Amendment right. The question then turns to which of these defendants is entitled to relief, i.e. which can show plain error.

> We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from [*Crosby*, 397 F3d at 117-118]:

> > Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited. . . . . Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we conclude that the "further sentencing proceedings" generally appropriate

for pre-*Booker* . . . sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, *but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence.* . . .

A remand for determination of whether to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, . . . an appellate court will normally be unable to assess the significance of any error that might have been made. . . .

Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post-*Booker* . . . regime the sentence would have been essentially the same as originally imposed. Conversely, a district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.

*In short, a sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different.* . . .

Thus, in accordance with this analysis, in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing. *Id.* at 118. [*Lockridge*, slip op at 32-34 (emphasis in original, some alterations in original).]

Banks first challenges his score of 10 points for OV 1. MCL 777.31(1) governs the assessment of points for the use of a weapon during an offense. Subsections (a)-(c) provide for scoring 15-25 points if a "cutting or stabbing weapon," harmful chemical substance, or firearm is used. Subsection (d) requires the assessment of 10 points if "[t]he victim was touched by any other type of a weapon." Banks was convicted of armed robbery on the theory that one of the assailants blandished a hammer during the offense. Accordingly, Banks's score under OV 1 was supported by facts found by the jury.

Banks also raises concern with his score of 1 point for OV 2, measuring the lethal potential of the weapon used in an offense. MCL 777.32(1)(a)-(d) provides for the assessment of 5-15 points if the defendant uses a harmful chemical substance, incendiary or explosive material, firearm, or cutting or stabbing weapon. One point is appropriate if "any other potentially lethal

weapon" is used. MCL 777.32(1)(e). Again, this score was based on facts found by the jury. To convict Banks of armed robbery, the jury concluded that one of the assailants possessed a hammer during the assault and robbery. The jury found the use of the hammer egregious as the jurors convicted Banks of assault with intent to do great bodily harm less than murder. Accordingly, this score also cannot support a finding of prejudice.

In relation to OV 3, the court assigned 25 points. OV 3 is scored when the victim of a crime receives an injury requiring medical treatment. MCL 777.33(1)(c) requires the scoring of 25 points when "[l]ife threatening or permanent incapacitating injury occurred to a victim." The level of injury suffered by the victim is not an element of any of the offenses of which Banks was convicted. Accordingly, the judge had to determine from the record evidence whether Bohen suffered life threatening or permanently incapacitating injuries as a result of the attack.

Finally, Banks challenges the score of 15 points for OV 10, which is assessed when a defendant exploits a vulnerable victim. MCL 777.40(1)(a) requires the assessment of 15 points when "[p]redatory conduct was involved." " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(2)(a). Banks's score is based on the fact that he and his coconspirators called Bohen repeatedly to set up a meeting. They lured Bohen out of the T.G.I. Friday's restaurant and then to the back parking lot where interruption would be less likely. One of the assailants struck Bohen from behind to make him easier prey for the other two. Many of these factors were not associated with the actual elements of the convicted offenses. Accordingly, the court's scoring of this variable was based, at least in part, on facts found by the judge.

Banks's total OV score was 76, placing him in OV Level IV for a Class A felony. Subtracting the 40 points scored for OVs 3 and 10 reduces Banks to OV Level II. Because Banks "can demonstrate that [his] guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment" and his sentence was not an upward departure, he has made "a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, slip op at 32-33.

Accordingly, we must remand to allow for further sentencing proceedings consistent with *Lockridge*, slip op at 34-36, and *Crosby*, 397 F3d at 117-118. As noted, the circuit court may score the variables based on judge-found facts. The court may conclude that it would have assigned the same number of points and imposed the same sentence regardless of the constitutional error. However, the court must be cognizant of the basis for the OV scores in order to properly exercise its scoring discretion.

We affirm the convictions of both defendants Lyons and Banks, but vacate Banks's sentence and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy

-15-